UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUMA AKHTER,<br><br>                    Plaintiff,<br><br>          - v -<br><br>COMPASS GROUP USA, INC.,<br><br>                    Defendant. | Civil Action No. 1:22-CV-02194 |

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION**

---

Littler Mendelson P.C.
900 Third Avenue – 8th Floor
New York, NY 10022
212.583.9600

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT........................................................................................................2

    A.    Plaintiff's Argument that the Arbitration Agreement is Part of a Non-Contractual Employee Handbook is Contrary to Fact and Law. ...........................2

    B.    No Trial on the Issue of Whether the Parties Entered Into a Valid, Binding Arbitration Agreement is Necessary. ..................................................................5

    C.    The Interpretation of the Term "Execution" in the Opt-Out Clause Within the Arbitration Agreement is a Matter Delegated to the Arbitrator.....................6

    D.    Defendant Is Not Required to Sign the Arbitration Agreement to Make it Enforceable.......................................................................................................7

CONCLUSION......................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayad v. PLS Check Casher of New York, Inc.*,
No. 20-CV-01039-CBA-CLP, 2021 WL 4272472 (E.D.N.Y. Sept. 21, 2021) ......................6

*Balde v. Town Sports Int'l, LLC*,
SDNY Case No. 18-cv-01467, ECF No. 23 .........................................................................5

*Barreto v. Jec II, LLC*,
No. 16-CV-9729 (KBF), 2017 WL 3172827 (S.D.N.Y. July 25, 2017) .................................8

*Beletsis v. Credit Suisse First Boston Corp.*,
No. 01 Civ. 6266(RCC), 2002 WL 2031610, 2002 U.S. Dist. LEXIS 16586
(S.D.N.Y. Sept. 4, 2002)........................................................................................................8

*Cota v. Art Brand Studios, LLC*,
No. 21-CV-1519 (LJL), 2021 WL 4864588 (S.D.N.Y. Oct. 15, 2021) ..................................7

*Crespo v. Kapnisis*,
No. 21-CV-6963 (BMC), 2022 WL 2916033 (E.D.N.Y. July 25, 2022).................................7

*Denson v. Trump for President, Inc.*,
No. 18-CV-2690 (JMF), 2018 WL 4568430 (S.D.N.Y. Aug. 30, 2018)
(Furman, J.) ............................................................................................................................6

*Gil v. Bensusan*,
No. 18-CV-10657 (VEC), 2019 WL 12334706 (S.D.N.Y. Oct. 30, 2019)..............................5

*Gilbert v. Indeed, Inc.*,
513 F.Supp.3d 374 (S.D.N.Y. 2021)......................................................................................6

*Lonstein Law Off., P.C. v. Evanston Ins. Co.*,
No. 20-CV-9712 (LJL), 2022 WL 72302 (S.D.N.Y. Jan. 6, 2022) .........................................7

*Lorenzo v. Prime Commc'ns, L.P.*,
806 F.3d 777 (4th Cir. 2015) ................................................................................................5

*Mahant v. Lehman Bros.*,
No. 99 Civ. 4421(MBM), 2000 WL 1738399 (S.D.N.Y. Nov. 22, 2000) ..............................8

*Matczak v. Compass Grp. USA, Inc.*,
No. 1:21-CV-20415, 2022 WL 557880 (D.N.J. Feb. 24, 2022)..............................................5

*Meyer v. Uber Techs., Inc.*
    868 F.3d 66 (2d Cir. 2017) ......................................................................................6

*Morgan v. Raymours Furniture Co.*,
    443 N.J. Super. 338, 128 A.3d 1127 (App. Div.), *cert. denied*, 137 S. Ct. 204,
    196 L. Ed. 2d 132 (2016)..........................................................................................5

*Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*,
    641 F. Supp. 2d 196 (S.D.N.Y. 2009) .....................................................................7

*Ngo v. Oppenheimer & Co, Inc.*,
    834 F. App'x 675 (2d Cir. 2021) .............................................................................3

*Nicosia v. Amazon.com, Inc.*,
    384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).....................6

*Patterson v. Raymours Furniture Co.*,
    96 F. Supp. 3d 71 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016) .......................3, 4

*Reyes v. Gracefully, Inc.*,
    No. 17-CV-9328 (VEC), 2018 WL 2209486 (S.D.N.Y. May 11, 2018) ................................7

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008) ....................................................................................8

*Thomas v. Pub. Storage, Inc.*,
    957 F. Supp. 2d 496 (S.D.N.Y. 2013) .....................................................................7

*Valdes v. Swift Transp. Co.*,
    292 F. Supp. 2d 524 (S.D.N.Y. 2003) .....................................................................8

*Winston v. Mediafare Ent. Corp.*,
    777 F.2d 78 (2d Cir. 1985) ......................................................................................7

**Statutes**

Fair Labor Standards Act ...............................................................................................1

New York Labor Law ....................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff Ruma Akhter ("Plaintiff") entered into a mandatory arbitration agreement after accepting employment with Defendant Compass Group USA, Inc. ("the Company" or "Defendant") through its subsidiary, Flik International Corp. ("Flik"). The Arbitration Agreement, which Plaintiff acknowledged and entered into separate and apart from any employee handbook, requires her to submit any employment-related claims against the Company to final and binding arbitration.[1] Language stating that Plaintiff agrees to the Arbitration Agreement and is "legally bound" is presented capital letters right above the signature line on the Arbitration Agreement. Despite her awareness and acknowledgment of the mandatory arbitration agreement, Akhter sued Defendant alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). (*See* Compl., Dkt. No. 1, at ¶ 34-53).

Plaintiff's argues in opposition to Defendant's Motion to Compel Arbitration that (a) the arbitration agreement that she signed was not binding because it was in an otherwise non-binding employment handbook, and (b) the arbitration agreement she signed was not binding because it lacks the signature of a representative of Compass.

Plaintiff's first argument is both factually and legally incorrect. As a factual matter, unlike arbitration agreements incorporated into a non-binding handbook, Compass provided to Plaintiff a separate agreement, which Plaintiff signed. However, even if the Arbitration Agreement were in the Employee Handbook, it would still be binding and enforceable as a matter of law.

Plaintiff's second argument is also legally incorrect: Defendant may enforce the Arbitration Agreement without having signed the agreement itself, and, regardless, Plaintiff is legally estopped

---

[1] The arbitration agreement requires Akhter to submit employment-related claims against Compass Group USA, Inc. and its companies, subsidiaries, sectors, affiliates, and divisions to final and binding arbitration. Flik is a wholly owned subsidiary of Compass Group USA, Inc. (Bell Decl. ¶ 2.)

from avoiding her arbitration obligations.

Because Plaintiff signed a binding, enforceable agreement to arbitrate her claims with the Company, and because she is estopped from arguing otherwise, Defendant asks the Court to dismiss the Complaint and compel Plaintiff to arbitrate her claims.

## ARGUMENT

### A.   Plaintiff's Argument that the Arbitration Agreement is Part of a Non-Contractual Employee Handbook is Contrary to Fact and Law.

Plaintiff argues first that she believed that her Arbitration Agreement was part of an Employee Handbook, which contains a disclaimer that nothing in the Handbook itself creates a binding contract. *See* Pl. Decl.[2] Ex. 2. Not only is this "belief" contradicted by fact, but even if Plaintiff's claim were true, Plaintiff's argument is wrong as a matter of law.

First, Plaintiff attaches to her declaration the very same arbitration agreement that Defendant submitted with the Declaration of Demetra Bell (Dkt. 17).[3] She acknowledges in her declaration that she received the Arbitration Agreement in an email of relevant documents that she signed in connection with her onboarding. (*See* Pl. Decl. ¶ 5). That arbitration agreement states, in all capital letters, just above the signature line:

> I HAVE, READ, UNDERSTAND AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE, AMONG OTHERS, ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT.
>
> DO NOT SIGN UNTIL YOU HAVE READ AND AGREED WITH THE ABOVE AGREEMENT.

Plaintiff does not dispute that she electronically signed this document on September 27,

---

[2] As used herein, "Plaintiff's Declaration" refers to the Declaration of Ruma Akhter, executed on July 6, 2022 (Dkt. No. 21).

[3] As used herein, "Bell Declaration" refers to the Declaration of Demetra Bell, executed on May 23, 2022, submitted with Defendant's Motion to Compel Arbitration (Dkt. No. 17).

2021, which is clearly printed, along with the date, on the Arbitration Agreement she submitted with her Declaration. (*See* Pl. Decl. Ex. 2 (Arbitration Agreement)).

Plaintiff submits no evidence to dispute that the Arbitration Agreement was signed independent of the acknowledgment of the Employee Handbook. In fact, the two different acknowledgments are attached as two separate exhibits to her Declaration. (*See* Pl. Decl. Ex. 1, 2) Defendant also produced an audit log which shows that the Arbitration Agreement generated and signed on September 27, 2021 was separate from other documents, including the Employee Handbook, the NY Employee Handbook Supplement, her federal (W-4) and NY tax forms, and a sexual harassment policy. (*See* Bell Declaration ¶ 17, Ex. 2, Dkt. 17-2 at 7).

In an almost identical situation, where the plaintiff executed both a non-binding employee handbook and a separate arbitration agreement, the Second Circuit upheld the district court's decision that the parties executed a binding arbitration agreement. *See Ngo v. Oppenheimer & Co, Inc.,* 834 F. App'x 675, 676 (2d Cir. 2021) ("The crux of Ngo's argument is that the agreements are not binding because they were provided in routinely issued employee handbooks that contained contractual disclaimers. But Ngo executed the arbitration agreements separate and apart from acknowledging receipt of the employee handbooks.").

Even if Plaintiff were correct that the Arbitration Agreement was a page in an otherwise non-binding Employee Handbook, her argument is still wrong as a matter of law. Even when an employee handbook has language providing that the handbook does not constitute a contract of employment, the arbitration agreement in it may still be enforceable when "the language of the arbitration agreement is distinct and mandatory." *See Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 77-78 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016), *as corrected* (Sept. 7, 2016), *as corrected* (Sept. 14, 2016). In *Patterson*, the arbitration agreement stated that the

"[Arbitration] Program is an essential element of your continued employment relationship with [employer] and is a condition of your employment," contrasting with the general language applicable to the remainder of the employee handbook that it does not form "a promise of continued employment, employment contract, term or obligation of any kind." *Id.*

As in *Patterson*, the Arbitration Agreement here contains unambiguous language in capital letters that Plaintiff agrees to be "legally bound" by it. Even if the Arbitration Agreement were not a separate document but were incorporated into the Handbook (which it is not), the relevant language stating that Plaintiff agrees to be "legally bound," stands in contrast to the general language in the handbook acknowledgment that disavows a contract, making the Arbitration Agreement itself enforceable, even if the employee handbook provisions are not.

The unambiguous language and binding language in the Arbitration Agreement here distinguishes this case from the cases and other non-binding, non-persuasive "authorities" that Plaintiff proffers in support of her opposition. Tellingly, Plaintiff cites no New York state or federal authority to support her argument that a disclaimer of contractual obligation in the Employee Handbook invalidates the provision in the Arbitration Agreement stating that Plaintiff agrees to be "legally bound." Instead, Plaintiff cites to a transcript of a conference with Judge Gardephe that contains no decision on the merits of the defendants' motion to compel arbitration. *See* Opp. Br.[4] at 5 (citing *Balde v. Town Sports Int'l, LLC*, SDNY Case No. 18-cv-01467, ECF No. 23, at 5:24-25-6:1-8)). But there, the Court stated that "I haven't made a decision here about anything," and noted that the two problems were that the arbitration provision *did not have a signature* to demonstrate assent to the agreement, and that the agreement itself has a disclaimer

---

[4] As used herein, "Opposition Brief" refers to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration (Dkt. No.20).

that there is no contract between the parties. *See Balde,* ECF No. 23. Here, the Arbitration Agreement has a signature, which Plaintiff admits, and the agreement itself contains the opposite assertion: that Plaintiff agrees to be legally bound by the Arbitration Agreement.

Plaintiff also cites two cases outside of this jurisdiction, *Lorenzo v. Prime Commc'ns, L.P.,* 806 F.3d 777, 780–82 (4th Cir. 2015) and *Morgan v. Raymours Furniture Co.,* 443 N.J. Super. 338, 343, 128 A.3d 1127, 1130–31 (App. Div.), *cert. denied*, 137 S. Ct. 204, 196 L. Ed. 2d 132 (2016), where the arbitration agreements at issue are distinguishable because they were part of an employee handbook and contained neither a separate signature by the plaintiff or language that the arbitration clause was legally binding.

Finally, Plaintiff's after-the-fact statement in her declaration that she believed that the Arbitration Agreement was not a binding contract despite express language in the Agreement stating the opposite does not revoke Plaintiff's asset to the Arbitration Agreement, confirming that she read and agreed to be legally bound by the Arbitration Agreement. *See Gil v. Bensusan*, No. 18-CV-10657 (VEC), 2019 WL 12334706, at *3 (S.D.N.Y. Oct. 30, 2019) (finding that though Plaintiff states now that he "never understood the [arbitration] policy, he is not excused from his failure to read and understand" it, when he "signed a consent form expressly stating that he had received, read, and voluntarily consent to the arbitration policy contained in the handbook"); *accord Matczak v. Compass Grp. USA, Inc.,* No. 1:21-CV-20415, 2022 WL 557880, at *4 (D.N.J. Feb. 24, 2022) (finding language identical to that in the Arbitration Agreement to be evidence of knowing agreement to its provisions under New Jersey law and affording "no weight to Plaintiff's contrary assertions in her Declaration.")

**B.    No Trial on the Issue of Whether the Parties Entered Into a Valid, Binding Arbitration Agreement is Necessary.**

As explained above, the Arbitration Agreement, is enforceable on its terms. Plaintiff's cited

authority does not support her argument that the circumstances here require a trial. In *Gomez v. Winn-Dixie*, this Court held that the Plaintiff was entitled to a hearing on whether he signed the arbitration agreement because the log noting that he signed the arbitration agreement was dated on a particular day in which Plaintiff was in the hospital. Here, however, Plaintiff *does not dispute* that she signed the documents in question. (*See* Pl. Decl. at 5).

The remainder of Plaintiff's cited authorities are equally inapplicable. Both *Meyer v. Uber Techs., Inc.* 868 F.3d 66, 74 (2d Cir. 2017) and *Nicosia v. Amazon.com, Inc.,* 384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020) involve a "clickwrap" agreement contained in terms of use policies for customers of the services involved, not a separately signed employment Arbitration Agreement. In *Ayad v. PLS Check Casher of New York, Inc.*, No. 20-CV-01039-CBA-CLP, 2021 WL 4272472 (E.D.N.Y. Sept. 21, 2021), a trial was necessary because Defendant only produced a few pages of a longer arbitration agreement. In contrast, here, the complete text of the Arbitration Agreement signed by the Plaintiff was presented in declarations from both Plaintiff and Defendant and is undisputed.

## C.    The Interpretation of the Term "Execution" in the Opt-Out Clause Within the Arbitration Agreement is a Matter Delegated to the Arbitrator.

As explained in Defendant's moving brief, the Arbitration Agreement contains a delegation clause which provides the "arbitrator, and not any federal state or local court" with the "exclusive authority" to resolve any dispute relating to the "enforceability, applicability, or interpretation" of the Agreement. (Bell Decl. Ex. A). Delegation clauses are routinely enforced.[5] Whether Plaintiff

---

[5] *See Rent-A-Ctr., W., Inc.*, 561 U.S. 63, 67 (2010); *Denson v. Trump for President, Inc.,* No. 18-CV-2690 (JMF), 2018 WL 4568430, at *1 (S.D.N.Y. Aug. 30, 2018) (Furman, J.) (enforcing delegation provision in employment-related arbitration agreement); *Gilbert v. Indeed, Inc.*, 513 F.Supp.3d 374, 409 (S.D.N.Y. 2021) ("If the parties evidenced a "clear and unmistakable" intent to submit the dispute to an arbitrator, then the Court shall delegate the third question to the arbitrator. ") (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, __ U.S. __, __,139 S.Ct. 524, 530 (2019)); *Lonstein Law Off., P.C. v. Evanston Ins. Co.*, No. 20-CV-9712 (LJL), 2022 WL

did or did not opt out of the binding Arbitration Agreement and the interpretation of the "execution date" according to the language of the Arbitration Agreement are issues that fall within the scope of the delegation clause. *See Winston v. Mediafare Ent. Corp.,* 777 F.2d 78, 82 (2d Cir. 1985) (using contract interpretation principles to determine what date was meant by the date of the "execution," as used in one particular agreement).[6]

### D.   Defendant Is Not Required to Sign the Arbitration Agreement to Make it Enforceable.

The absence of a signature from the Defendant on the Arbitration Agreement does not invalidate it. Under both the FAA and New York Law, to be enforceable, an Arbitration Agreement does not need to be signed *at all,* much less by both parties. *Thomas v. Pub. Storage, Inc.,* 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013); *Crespo v. Kapnisis,* No. 21-CV-6963 (BMC), 2022 WL 2916033, at *3 (E.D.N.Y. July 25, 2022) (noting that New York law does not require that an arbitration agreement be signed by the parties in order to be enforceable); *see also Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC,* 641 F. Supp. 2d 196, 203 (S.D.N.Y. 2009) (holding similarly).

Thus, Defendant need not sign the Arbitration Agreement to make it enforceable. *See Reyes v. Gracefully, Inc.,* No. 17-CV-9328 (VEC), 2018 WL 2209486, at *3 (S.D.N.Y. May 11, 2018) (holding that whether the defendant signed the arbitration agreement is "immaterial" to its enforceability because the defendant is not seeking to avoid arbitration, and that by failing to object

---

72302, at *9 (S.D.N.Y. Jan. 6, 2022) (enforcing the parties' agreement delegating the question of whether the dispute falls within the scope of the arbitration agreement to the arbitrator); *see Cota v. Art Brand Studios, LLC,* No. 21-CV-1519 (LJL), 2021 WL 4864588, at *8 (S.D.N.Y. Oct. 15, 2021) (holding that when threshold issues of arbitrability are delegated to the arbitrator, all issues, except that of the formation of the agreement in the first place, are to be decided by the arbitrator).
[6] Plaintiff's only support for the interpretation of the term "execution" as requiring the signature of two parties are (a) two webpages that are not sources of law, much less binding authority, and (b) his own declaration that at some point he negotiated the interpretation of that term in another context in an entirely separate case.

to the arbitration agreement and by proceeding to benefit from it, the defendant "manifested an intent to be bound by it"); *see also Valdes v. Swift Transp. Co.,* 292 F. Supp. 2d 524, 531 (S.D.N.Y. 2003); *Mahant v. Lehman Bros.,* No. 99 Civ. 4421(MBM), 2000 WL 1738399, at *2, 3 (S.D.N.Y. Nov. 22, 2000) (enforcing arbitration agreement in employment application signed only by employee); *Beletsis v. Credit Suisse First Boston Corp.,* No. 01 Civ. 6266(RCC), 2002 WL 2031610, 2002 U.S. Dist. LEXIS 16586, at *8 (S.D.N.Y. Sept. 4, 2002) (enforcing arbitration clause in employee handbook and acknowledgement signed by employee).

Further, a non-signatory to an Arbitration Agreement (even another entity or third party) may compel a signatory to an Arbitration Agreement to arbitrate claims that fall within the scope of the agreement under principles of estoppel. *See Sokol Holdings, Inc. v. BMB Munai, Inc.,* 542 F.3d 354, 361 (2d Cir. 2008)*; Dhaliwal v. Mallinckrodt plc,* No. 18-CV-3146 (VSB), 2019 WL 4739045, at *6 (S.D.N.Y. Sept. 29, 2019) (finding that "Plaintiff's claims are intertwined with the Arbitration Agreement, and that it would be "inequitable for [Plaintiff] to refuse to arbitrate on the ground that [she] had made no agreement with [Defendants]" when her employment claims were intertwined with the arbitration agreement, the Defendant at issue was the successor of her employer, and the employment issues asserted fell within the scope of the arbitration agreement); *Barreto v. Jec II, LLC,* No. 16-CV-9729 (KBF), 2017 WL 3172827, at *6 (S.D.N.Y. July 25, 2017). Under estoppel principles, a party that did not sign an arbitration agreement "may compel a signatory to that agreement to arbitrate a dispute" where reviewing the relationship between the parties, the contracts at issue, and the issues that have arisen" shows that the issues that the nonsignatory is seeking to resolve are "intertwined in agreement that the estoped party has signed." *See Barreto,* 2017 WL 3172827, at *6. Here, the issues sought to be arbitrated which directly relate to Plaintiff's employment related directly to the Arbitration between herself and her

employer. Thus, even if Defendant's signature *were* somehow required, Plaintiff still cannot evade her obligation to arbitrate her claims.

## <u>CONCLUSION</u>

For the reasons stated above and in Defendant's Memorandum of Law in support of its Motion to Compel Arbitration (Dkt. No. 15), Defendant requests that the Court dismiss this action , compel Plaintiff to submit her claims to arbitration, and grant Defendant such other or further relief as the Court deems appropriate.

Dated:     August 5, 2022

*/s/ Shawn Matthew Clark*
Shawn Matthew Clark
Daniella Adler
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298
212.583.9600
SMClark@littler.com
DAdler@littler.com

*Attorneys for Defendant*
